REQUESTED BY: Harold D. Simpson, Chairman, Nebraska Public Service Commission.
Whether LB 565 requires the Public Service Commission to send motor transportation inspectors employed by it to the Nebraska Law Enforcement Training Center for certification?
Yes.
Legislative Bill 565 amended the language of Neb.Rev.Stat. § 81-1401(3) (Reissue 1976). That statute now reads as follows:
 "(3) (a) Law enforcement officer shall mean any person who is responsible for the prevention or detection of crime or the enforcement of the penal, traffic, or highway laws of the state or any political subdivision thereof for more than one hundred hours per year and is authorized by law to make arrests, and includes but is not limited to:
 "(i) A full or part-time member of the Nebraska State Patrol;
"(ii) A county sheriff;
 "(iii) A full or part-time employee of a county sheriff's office; or
 "(iv) A full or part-time employee of a municipal or village police agency; but
 "(b) Law enforcement officer shall not include employees of the Department of Correctional Services, probation officers under the Field Probation Service or appointed under section 43-236, Reissue Revised Statutes of Nebraska, 1943, or parole officers appointed by the Parole Administrator; . . ." (Emphasis supplied to those provisions added by LB 565.)
The purpose of the amendment is to broaden the definition of `law enforcement officer' for the purpose of requiring training at the Grand Island Law Enforcement Training Center. Prior to the amendment, Neb.Rev.Stat. 81-1401
(Reissue 1976), dictated that a law enforcement officer was any person who was responsible for the prevention or detection of crime or the enforcement of penal laws `on a regular basis'. The requirement that a person should serve on a regular basis is deleted by LB 565. In addition, LB 565 adds to the definition the requirement that the law enforcement officer is one who is authorized by law to make arrests.
The legislative history of LB 565 reveals that the amendment was made to insure that any public employee who carries out law enforcement functions or who has traditional law enforcement powers is required to receive law enforcement training at the Grand Island Law Enforcement Training Center. The expressed intent was to require all state agencies which employ persons who exercise or possess the powers defined in Neb.Rev.Stat. § 81-1401 (Reissue 1976), to have those employees receive law enforcement training.
Legislative Bill 565 specifically excluded employees of the Department of Correctional Services, probation officers and parole officers from the definition of `law enforcement officers'. However, it does not exclude any other state employees who would satisfy the definition of `law enforcement officer'.
To answer your question, we must determine whether the motor transportation inspectors employed by the Public Service Commission satisfy the definition of `law enforcement officer' found in Neb.Rev.Stat. § 81-1401 (Reissue 1976), as amended by LB 565. In our opinion, LB 565 does operate to include the Public Service Commission's motor transportation inspectors in the definition of `law enforcement officer' for the purpose of requiring training at the Grand Island Law Enforcement Training Center.
In your letter, you indicated that the motor transportation inspectors stop motor carriers to inspect their credentials against their loads to determine whether the Motor Carrier Act and the rules and regulations adopted pursuant thereto are being complied with. We note that pursuant to Neb.Rev.Stat. § 75-322.01 (1978 Cum.Supp.), any person who knowingly and willfully violates any provision of Neb.Rev.Stat. §§ 75-301 to 75-322 (Reissue 1976), or any rule, regulation, or order of the commission, or any term of a permit or certificate issued by the commission, shall be guilty of a Class IV misdemeanor. It thus appears that the motor transportation inspectors could be characterized as responsible for the detection of crime and/or the enforcement of the penal laws of the state.
You have additionally indicated that the motor transportation inspectors are commissioned as `State Deputy Sheriffs'. Neb.Rev.Stat. § 84-106 (1978 Cum.Supp.), provides that the Governor may appoint persons to enforce the provisions of the criminal laws. Those persons are designated deputy state sheriffs and possess `. . . the same powers in each of the several counties of the state as the sheriffs have in their respective counties, insofar as the enforcement of the criminal laws is concerned. . . .' Neb.Rev.Stat. § 84-106 (1978 Cum.Supp.). County sheriffs are authorized by Neb.Rev.Stat. § 29-401 (Reissue 1975), to make arrests for violations of state laws. Correspondingly, deputy state sheriffs are authorized by law to make arrests for violations of state laws.
Consequently, it is our opinion that the motor transportation inspectors employed by the Public Service Commission are law enforcement officers within the meaning of Neb.Rev.Stat. § 1-1401 (Reissue 1976), as amended by LB 565. Thus, they would be required to attend the Grand Island Law Enforcement Training Center.
You additionally ask that if LB 565 does apply to the Public Service Commission, what employees would be affected, those hired after January 1972, or those hired after the effective date of LB 565? Neb.Rev.Stat. § 81-1414 (Reissue 1976), provides that after January 1, 1972, law enforcement officers already serving under permanent appointment shall not be required to attend the training center as a condition of tenure or continued employment. Legislative Bill 565 does not change or amend this statute. In our opinion, since LB 565 does not grant any grandfather rights, then Neb.Rev.Stat. § 81-1414 (Reissue 1976) applies to employees of the Public Service Commission. Thus, all motor transportation inspectors hired after January 1, 1972, are required to attend the training center.